UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| COLORADO RIVER CUTTHROAT TROUT, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 00-2497 (PLF) |
| DIRK KEMPTHORNE, et al., | ) ) ) | |
| Defendants.[1] | ) ) | |

OPINION

       This case is before the Court on plaintiffs' motion for summary judgment. It arises from the decision of the United States Fish and Wildlife Service ("FWS") to reject plaintiffs' December 9, 1999 petition to list the Colorado River cutthroat trout under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq. Specifically, plaintiffs assert that the FWS's April 20, 2004 Finding on the Petition violated mandatory ESA procedures and standards specific to 90-day findings and failed to consider applicable ESA substantive requirements for listing species. Plaintiffs also argue that the Finding's reliance on certain trout populations and its assessment of threats to the trout was arbitrary and capricious.

       Upon careful consideration of the arguments of the parties and the entire record in the case, the Court grants plaintiffs' motion for summary judgment, and directs defendants to conduct a full status review of the trout within nine months.

---

[1] Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Secretary of the Interior Dirk Kempthorne has been substituted as a defendant for former Secretary Gale Norton.

I.  BACKGROUND

*A.  Statutory and Regulatory Framework*

The ESA "provide[s] a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved."  16 U.S.C. § 1531(b).  To achieve its objectives, the ESA directs the Secretary of the Interior to determine which species of plants and animals are "threatened" or "endangered."  16 U.S.C. § 1533.[2]  An "endangered species" is "any species which is in danger of extinction throughout all or a significant portion of its range."  16 U.S.C. § 1532(6).  A "threatened species" is "any species that is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."  16 U.S.C. § 1532(20).

Any interested person may file a petition with the Secretary of the Interior to list a species as threatened or endangered under the ESA.  16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a).  Upon receipt, the Secretary must review the petition and, "to the maximum extent practicable," within 90 days make a finding as to whether the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted."  16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1).  "Substantial information" is the "amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted."  50 C.F.R. § 424.14(b).

FWS regulations dictate that in making the 90-day finding, the Secretary must consider whether the petition:

---

[2]     Within the Department of the Interior, the FWS oversees the listing process.

      (i)  Clearly indicates the administrative measure recommended and gives scientific and common name of the species involved;

      (ii)  Contains detailed narrative justification for the recommended measure, describing, based upon available information, past and present numbers and distribution of the species involved and any threats faced by the species;

      (iii)  Provides information on the status of the species over all or a significant portion of its range; and

      (iv)  Is accompanied by appropriate supporting documentation in the form of bibliographic references, reprints of pertinent publications, copies of reports or letters from authorities, and maps.

40 C.F.R. § 424.14(b)(2).  If the Secretary concludes in its 90-day finding that the petition does not present substantial information indicating that a listing may be warranted, the Secretary publishes this finding in the Federal Register, and the administrative listing process concludes.  16 U.S.C. § 1533(b)(3)(A).  The ESA expressly provides, however, that a negative 90-day finding may be challenged in federal court.  16 U.S.C. § 1533(b)(3)(C)(ii).

      If the Secretary concludes instead that the petition does present substantial information indicating that a listing may be warranted, he publishes a notice of that finding in the Federal Register, and commences a status review of the species.  16 U.S.C. § 1533(b)(3)(A)-(B); 50 C.F.R. § 424.14(b)(3).  After the status review and within twelve months of the receipt of the petition, the Secretary must determine whether listing of the species is "warranted," "not warranted," or warranted but precluded by other listing priorities.  16 U.S.C. § 1533(b)(3)(B)(ii); see 50 C.F.R. § 424.14(b)(3).

*B. Facts*

The Colorado River cutthroat trout is the only indigenous trout of the upper Colorado River system. Supplemental Complaint for Declaratory and Injunctive Relief ("Supp. Compl.") ¶ 19. During its breeding season, the trout displays radiant colors of crimson, orange and golden yellow laid over a brilliant brassy background color. Id. ¶ 18. The trout lives and thrives in clean, cool mountain streams. Id. ¶ 20. The trout requires water with a high dissolved oxygen content, low water temperatures in the summer, and clean gravel for spawning. Id. ¶ 20. In addition, the trout need pools for summer rest and for surviving winter. Id. ¶ 20. The trout primarily feed on insects, which rely on the presence of streamside vegetation. Id. ¶ 20. In addition to providing a food supply, streamside vegetation also provides shade and cover for the trout. Id. ¶ 20.

Plaintiffs maintain that the trout, which historically inhabited areas west of the Continental Divide in Colorado, southern Wyoming, eastern Utah, extreme northwestern New Mexico, and northeastern Arizona, currently occupies approximately five percent of its historic range. Supp. Compl. ¶¶ 19, 21. This figure includes trout populations that have been hybridized with introduced, non-native species. Id. ¶ 21. Genetically pure trout populations, as defined by state and federal agencies, are estimated to occupy slightly more than two percent of their historic range. Id.

According to plaintiffs, existing trout populations are relegated primarily to small and isolated headwater streams in habitat areas over 7,000 feet in elevation. Supp. Compl. ¶ 22. Isolated populations prevent genetic exchange among populations, leading to loss of genetic diversity, and reduce population fitness to adapt to natural environments. Id. In addition, trout

populations in small, isolated streams are at greater risk from droughts, floods, freezes, debris flows and other types of stochastic and catastrophic events. Id. Plaintiffs claim that when populations are lost to such events, their isolation ensures that the habitat will not be recolonized. Id.

Plaintiffs identify several other factors that have contributed to the range reduction and isolation of the trout. Supp. Compl. ¶ 23. Livestock grazing, water diversions, logging, road building, mining, and oil and gas development all contribute to the destruction of the trout's habitat because such activities adversely affect riparian vegetation, stream hydrology, and water quality. Id. ¶ 23. Plaintiffs aver, and defendants deny, that in addition to these threats, the continued stocking and spread of non-native trout presents one of the single greatest threats to the trout population. Id. ¶ 24; Answer to Supplemental Complaint for Declaratory and Injunctive Relief ("Answer") ¶ 24. Plaintiffs assert that federal regulations and management and state management activities are inadequate to prevent these threats to the trout population. Supp. Compl. ¶ 25.

*C. Procedural History*

On December 9, 1999, plaintiffs filed with the FWS a Petition to list the Colorado River cutthroat trout as an endangered or threatened species. Supp. Compl. ¶ 26. Defendants received the Petition to list the trout on December 16, 1999. Id. In October 2000, plaintiffs brought this action, alleging that defendants violated Section 4(b)(3)(A) of the Endangered Species Act, 16 U.S.C. § 1533(b)(3)(A), by failing to make a 90-day Finding on the Petition. Supp. Compl. ¶ 27.

Cross-motions for summary judgment were fully briefed, but were mooted when, on April 20, 2004, the FWS finally issued the required 90-day finding. See 69 Fed. Reg. 21,151 (Apr. 20, 2004). The Finding concluded that the Petition did not present substantial information that listing the trout may be warranted. Id. at 21,157-58. Before issuing the April 29, 2004 Finding, the FWS had solicited information on various threats to the trout from wildlife regulatory agencies in Utah, Wyoming, and Colorado; the United States Forest Service; the National Park Service; and the United States Bureau of Land Management. Supp. Compl. ¶ 29. The FWS did not seek public comment or request information from independent scientists or other interested parties. Memorandum in Support of Plaintiffs' Motion for Summary Judgment ("Pl.'s Mem.") at 17.[3] Based on the information acquired from outside agencies, the FWS concluded that state management programs are "improving the status of [the Colorado River cutthroat trout] and continued improvement is anticipated in the future." 69 Fed. Reg at 21,158.

After the April 20, 2004 Finding was issued, plaintiffs amended their complaint to allege that defendants violated ESA requirements and the Administrative Procedure Act when conducting the 90-day review by failing to solicit public comments, by going beyond "the four corners of the Petition" and soliciting information from selected state and federal agencies, and by not conducting a "full status review" of the Colorado River cutthroat trout. Supp. Compl. ¶¶ 30-45. On April 7, 2005, plaintiff filed a motion for summary judgment.

---

[3]   Upon learning that the FWS was gathering information from outside agencies, plaintiff Noah Greenwald, who had prepared the Petition, sent the FWS a letter in response to the information about the trout in these solicitations. Plaintiffs' Reply in Support of Motion for Summary Judgment ("Pl.'s Reply") at 5; see Administrative Record 594.

II.  DISCUSSION

*A.  Standard of Review*

Judicial review of agency decisions under the ESA is governed by section 706 of the APA.  5 U.S.C. § 706; see City of Las Vegas v. Lujan, 891 F.2d 927, 932 (D.C. Cir. 1989).  The reviewing court may set aside agency actions, findings, or conclusions when they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  5 U.S.C. § 706(2)(A).

There is a strong presumption in favor of upholding decisions of the FWS in view of its expertise in the area of wildlife conservation and management and the deferential standard of review.  Carlton v. Babbitt, 900 F. Supp. 526, 530 (D.D.C. 1995); see Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 375-78 (1989).  Although the Court may not substitute its judgment for that of the agency, the Court's review must nevertheless be "searching and careful."  Id. at 378.  If the agency has "considered the relevant factors and articulated a rational connection between the facts found and the choice made," its decision must be upheld.  Baltimore Gas & Elec. Co. v. Natural Res. Defense Council, 462 U.S. 87, 105 (1983).

For challenges to an agency's construction of the statutes that it administers, the Court's review must be particularly deferential.  The Court must defer to the agency's interpretation of a statute that it implements "so long as it is reasonable, consistent with the statutory purpose, and not in conflict with the statute's plain language."  OSG Bulk Ships v. United States, 132 F.3d 808, 814 (D.C. Cir. 1998) (quoting Coal Employment Project v. Dole, 889 F.2d 1127, 1131 (D.C. Cir. 1989)); see Chevron, U.S.A., Inc. v. Natural Res. Defense Council, 467 U.S. 837, 845 (1984), Davis v. Latschar, 83 F. Supp. 2d 1, 5 (D.D.C. 1998), aff'd

202 F.3d 359 (D.C. Cir. 2000).  An agency's interpretation of its own regulations also is entitled to substantial deference by the courts unless it is "plainly erroneous or inconsistent with the regulation."  Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); see also Stinson v. United States, 508 U.S. 36, 45 (1993); Wyoming Outdoor Council v. United States Forest Serv., 165 F.3d 43, 52 (D.C. Cir. 1998); Everett v. United States, 158 F.3d 1364, 1367 (D.C. Cir. 1998).

### B.  *Substantive Claims*

Plaintiffs claim that the 90-day Finding was deficient in several respects. Plaintiffs' primary argument is that the process followed by the FWS violated basic ESA procedures and mandates.  Specifically, plaintiffs argue that in its 90-day review of the Petition, the FWS improperly solicited information and opinions on the Petition from state and federal agencies, which, plaintiffs claim, violates Section 4(b)(3)(A) of the ESA, 16 U.S.C. § 1533(b)(3)(A).  Pl.'s Mem. at 13-21.  Defendants respond that Congress did not foreclose FWS from engaging in a thorough review of a petition at the 90-day stage, and that ESA implementing regulations give the FWS discretion to consult with affected states and other federal agencies in making a listing determination.  Defendants' Opposition to Plaintiffs' Motion for Summary Judgment ("Def.'s Mem.") at 12-13 (citing 50 C.F.R. § 424.13).  Defendants also rely upon a 1996 FWS policy governing consideration of citizen-initiated petitions, known as the Petition Management Guidance ("PMG"), which they argue allows the FWS to evaluate petitions against the information available in its files, and also, if time permits, data from other sources.  Def.'s Mem. at 12.  Defendants further assert that gathering new information was particularly important in this

case, because the Petition was over three years old when the Finding was prepared; it therefore no longer provided a complete picture of the current status of the cutthroat trout. Def.'s Mem. at 13.

Plaintiffs rely heavily on Center for Biological Diversity v. Morgenweck, 351 F. Supp. 2d 1137 (D. Colo. 2004), a decision from the United States District Court for the District of Colorado, which dealt with the same issue as that presented here. In Morgenweck, the FWS engaged in a review of plaintiffs' petition at the 90-day stage, soliciting twelve opinions from state and federal agencies. As here, the plaintiffs argued that the FWS had impermissibly expanded the scope of the 90-day review. Id. at 1142. The court, relying on the statutory language of the ESA, held that the FWS's consideration of information outside the four corners of the petition provided by state and federal agencies "was overinclusive of the type of information that the ESA contemplates to be reviewed at this stage." Center for Biological Diversity v. Morgenweck, 351 F. Supp. 2d at 1143. "[A] targeted information campaign, begun only after the Petition had been filed, was improper." Id. "[T]hose petitions that are meritorious on their face should not be subject to refutation by information and views provided by selected third-parties solicited by FWS. Invitations by FWS to others to respond to the Petition should await the 12-month status review." Id. (citing 16 U.S.C. § 1533(b)(3)(A) (if "petition presents substantial scientific or commercial information that the petitioned action may be warranted . . . the Secretary shall promptly commence a review of the status of the species concerned.")).

This Court finds the reasoning of Morgenweck persuasive. The statute calls upon the FWS to make a threshold determination as to "whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A) (emphasis added); see also 50 C.F.R. § 424.14(b)(1) (repeating statutory

9

language of 16 U.S.C. § 1533(b)(3)(A)). It does not authorize the FWS to weigh the information provided in the petition against information selectively solicited from third parties. The FWS simply cannot bypass the initial 90-day review and proceed to what is effectively a 12-month status review, but without the required notice and the opportunity for public comment. "[P]etitions that are meritorious on their face should not be subject to refutation by information and views provided by selected third-parties solicited by FWS." Center for Biological Diversity v. Morgenweck, 351 F. Supp. 2d at 1143.

Defendants acknowledge that under the ESA, Congress intended the 90-day finding to be a less searching review than the 12-month finding. Def.'s Mem. at 12. Defendants nevertheless contend that an ESA implementing regulation, 50 C.F.R. § 424.13, vests the FWS with the discretion to determine when consultation with outside parties is appropriate. Def.'s Mem. at 12-13. Although the defendants' interpretation of this regulation is entitled to substantial deference by the Court, see Wyoming Outdoor Council v. United States Forest Serv., 165 F.3d at 52, even a cursory reading of that regulation in the context of the other ESA implementing regulations shows that 50 C.F.R. § 424.13 refers to the FWS's right to consult with affected states in the course of a status review or subsequent listing determinations, not at the 90-day review stage. See 50 C.F.R. §§ 424.10-.21 and particularly the language and structure of 50 C.F.R. § 424.14.[4]

---

[4] Notably, the FWS has explicitly acknowledged in other findings that the 90-day finding is limited to the petition and information available in the files of the FWS. See Pl.'s Mem. at 16 (citing several 90-day findings where the FWS limited its review to the petition and information in their files). For example, in a recent finding on a petition, the FWS explicitly stated:

Interpreting the regulations to allow the FWS to solicit information from outside agencies at the 90-day finding stage would render meaningless the detailed notice and comment provisions of the ESA implementing regulations. If there had been a positive Finding on the Petition, the FWS would have had to undertake a 12-month status review, which would have included inviting comments from all interested parties regarding the status of the Colorado River Cutthroat trout. See 50 C.F.R. § 424.15(c) (explaining that during twelve-month status review FWS must invite comment from all interested parties); see also 16 U.S.C. § 1533(b)(3)(B); Center for Biological Diversity v. Morgenweck, 351 F. Supp. 2d at 1143. The targeted information-gathering campaign in which the FWS engaged here would not be allowed during the 12-month status review. Id. Both the statute setting forth the 90-day review requirements, 16 U.S.C. § 1533(b)(3)(B), and its implementing regulation, 50 C.F.R. § 424.14(b), make plain that the 90-day review is to be based on the petition alone or in combination with the FWS's own records.

Defendants' reliance on the PMG is misplaced. As defendants admit in their brief, a recent case from this District found the PMG to be inconsistent with the public notice and comment procedures set forth in 16 U.S.C. § 1533(h), and also to be "facially invalid" because it allowed the FWS to avoid the "mandatory, nondiscretionary obligations" embodied in 16 U.S.C.

---

> Our review for the purpose of a so-called 90-day finding . . . is limited to a determination of whether the information in the petition meets the 'substantial information' threshold. We do not conduct additional research at this point, nor do we subject the petition to rigorous critical review. Rather, as the Act and regulations contemplate, at the 90-day finding, we accept the petitioner's sources and characterizations of the information unless we have specific information to the contrary.

69 Fed. Reg. 60,605-06 (Oct. 12, 2004).

11


§ 1533(b)(3)(B). See Am. Lands Alliance v. Norton, 242 F. Supp.2d 1, 18 (D.D.C. 2003), motion for reconsideration on that issue denied, 360 F. Supp. 2d 1 (D.D.C. 2003). After its initial decision, the court permanently enjoined FWS from applying the PMG nationwide. Am. Lands Alliance v. Norton, No. 00-2339, 2004 U.S. Dist. LEXIS 27533 (June 2, 2004), appeal dismissed, No. 03-5201, 2004 U.S. App. LEXIS 15243 (D.C. Cir. July 21, 2004). See also Center for Biological Diversity v. Norton, 254 F.3d 833, 840 (9th Cir. 2001) (holding that the PMG violates the plain terms of the ESA); Center for Biological Diversity v. Morgenweck, 351 F. Supp. 2d at 1143 (the PMG is not binding authority). The Court agrees with the holding of American Lands Alliance and therefore does not view the PMG as binding authority. At any rate, its impact on this issue is limited, as defendants do not cite and the Court cannot find any language in the PMG that calls for the kind of information solicitation undertaken by the FWS here.

Defendants' assertion that gathering new information was particularly important in this case because the Petition was three years old is also misguided. While some of the data cited in plaintiffs' Petition might have been stale, it does not necessarily follow that it was inadequate or incorrect. See Center for Biological Diversity v. Morgenweck, 351 F. Supp. 2d at 1142. Furthermore, the Court will not allow the FWS to use its own failure to fulfill its statutory duty to issue a timely 90-day finding as a basis to ignore other statutory commands. Id.; see 16 U.S.C. § 1533(b)(3)(B) (conferring upon the Secretary the obligation to determine whether the petition presents sufficient information to proceed to a full status review).

For these reasons, the Court finds that the FWS's 90-day review of the Petition in this case was contrary to law because FWS solicited information and opinions from limited outside sources. See 5 U.S.C. § 706(2)(A). Because the Court has found that the FWS's

consideration of the Petition was procedurally flawed, it need not consider the merits of plaintiffs' other claims.

*C.  Remedy*

Having found that the FWS to have violated the procedural mandates of Section 4(b)(3)(A) of the ESA, 16 U.S.C. § 1533(b)(3), the Court has discretion to fashion appropriate equitable relief.  "Congress did not limit district courts' authority to provide equitable relief under the ESA, and indeed, specifically reserved their traditional authority to fashion appropriate equitable relief."  Defenders of Wildlife v. Norton, 239 F. Supp. 2d 9, 25 (D.D.C. 2002); see also 16 U.S.C. § 1540(g)(5) ("[t]he injunctive relief provided by this subsection shall not restrict any right which any person (or class of persons) may have . . . to seek any other relief (including relief against the Secretary . . .").

Plaintiffs request that the Court set aside the FWS's Finding and order the FWS to complete a full status review and findings on the trout within six months -- essentially, to go forward as though the agency had made a 90-day finding indicating that listing might be warranted.  Defendants argue that doing so would impermissibly infringe on the agency's discretion to decide matters within its expertise, and that the proper remedy (if any) would be to remand the determination to allow the agency to exercise its discretion to reconsider the 90-day finding.  Id.

The Court agrees with the plaintiff that ordering a full status review is the only fair and equitable remedy in the posture of this case.  The agency did undertake a 90-day review (albeit, belatedly), but the 90-day review undertaken impermissibly looked beyond the material in

13

the Petition. In effect, it constituted the beginning of a status review that must be completed, after public notice and a comment period, with input from all interested parties. Given the more than four-year delay in the FWS's issuance of the first, flawed, 90-day Finding, it would be inequitable and inappropriate to require the plaintiffs to start the administrative process all over again by filing a new petition. See Center for Biological Diversity v. Morgenweck, 351 F. Supp. 2d at 1144 (ordering defendants to complete a full status review after finding that its 90-day review was overinclusive because it went beyond the review mandate).

Plaintiffs request that the full status review take place within six months. Under the statute, if the FWS had made a timely 90-day finding, it would have been allowed a further nine months to conduct the status review. See 16 U.S.C. § 1533(b)(3)(B) (explaining that status review takes place within twelve months of the receipt of the petition, including three months allotted for a preliminary finding). Although the Court agrees with the plaintiffs that further delay should be avoided, the Court believes that ordering a full status review within nine months is appropriate under these circumstances.

## II. CONCLUSION

For the reasons stated above, the Court grants plaintiffs' motion for summary judgment. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 7, 2006